```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
UNITED STATES OF AMERICA                                          :
                                                                  :
                                                                  :
               -v-                                                :     13-CR-814-1 (JMF)
                                                                  :
MARINO ORTEGA,                                                    :     MEMORANDUM OPINION
                                                                  :              AND ORDER
                            Defendant.                            :
                                                                  :
------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

Defendant Marino Ortega was convicted, following a guilty plea, of conspiring to commit a series of robberies in 2013, during many of which he or his accomplice brandished a firearm. ECF No. 37, ¶¶ 8-15. On April 7, 2014, the Court sentenced Ortega to a term of 151 months' imprisonment — the low end of the applicable Sentencing Guidelines range — to be followed by a term of three years' supervised release. *See* ECF Nos. 40, 47, 86. With good-time credit, Ortega has now served roughly ten years of his sentence; he is currently due to be released on April 7, 2025. Ortega now moves, pursuant to 18 U.S.C. § 3582(c)(1)(A), for "compassionate release." *See* ECF No. 99; *see also* ECF No. 100 ("Def.'s Mem."). As amended by the First Step Act, the compassionate release statute provides that the Court "may reduce" a defendant's term of imprisonment "if it finds that . . . extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" and the sentencing factors set forth in 18 U.S.C. § 3553(a). *See* 18

U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Brookner*, 976 F.3d 228, 233-37 (2d Cir. 2020).[1] For the reasons that follow, Ortega's motion is GRANTED.

First, the Court finds that there are "extraordinary and compelling reasons warrant[ing]" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). To be clear, the Court disagrees with Ortega's contention that COVID-19 alone constitutes such a reason. Three years ago, before vaccines were widespread, the risks posed by COVID-19, especially to those in a custodial environment, rose to that level. *See, e.g.*, *United States v. Lopez*, No. 17-CR-204 (JMF), 2020 WL 7696005, at *1 (S.D.N.Y. Dec. 28, 2020) ("[T]he threat of COVID-19 to those in prison, by itself, constitutes an extraordinary and compelling reason for compassionate release."). But those risks have, thankfully, been substantially mitigated by widespread vaccination, and conditions today — generally and in FCI Hazelton (where Ortega is detained) specifically — are not, in the Court's view, dire enough to qualify as "extraordinary and compelling." *See* Gov't Opp'n 4. That said, the Court finds that Ortega's medical conditions, *see* Def.'s Mem. 2-13, do qualify as "extraordinary and compelling reasons warrant[ing]" a reduction in his sentence. As the Government itself acknowledges (in what can charitably be described as an understatement), Ortega has "several medical conditions." Gov't Opp'n 6. Indeed, taken together, his conditions easily qualify as "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." U.S.S.G. § 1B1.13, Application Note 1(A)(ii) (defining "extraordinary and compelling reasons").[2]

---

[1] Where, as here, a defendant moves himself for compassionate release, there is also a mandatory exhaustion requirement, *see* 18 U.S.C. § 3582(c)(1)(A), which Ortega has satisfied. *See* Def.'s Mem. 15; *see also* ECF No. 105 ("Gov't Opp'n"), at 4.

[2] In *Brooker*, the Second Circuit held that U.S.S.G. § 1B1.13 applies only to motions for compassionate release filed by the Bureau of Prisons ("BOP") and that "the First Step Act freed

Additionally, the Court concludes that the Section 3553(a) factors support a reduced sentence. To be sure, there are ample reasons — most notably, the seriousness of Ortega's criminal conduct and his lengthy criminal history — for a substantial sentence. But by any reasonable measure, ten years — which is what Ortega has effectively served with good-time credit — qualifies as a substantial sentence, and if the Court knew at the time of sentencing what it knows today it would have concluded that ten years was a "sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" Section 3553(a)(2). 18 U.S.C. § 3553(a). Several considerations loom especially large in that respect. First, when the Court imposed Ortega's sentence, it did not know that his physical and mental health would be severely impacted by a rapidly progressing, incurable disorder, among other serious medical conditions. Second, the Court did not know that there would be a pandemic and that, as a result of the pandemic, Ortega's conditions of confinement would be considerably harsher. *See, e.g.*, *United States v. Fiseku*, No. 15-CR-384-1 (PAE), 2020 WL 7695708, at *6 (S.D.N.Y. Dec. 28, 2020) (observing that "time served during the pandemic is harder than during normal times"). And third, the Court did not know how well Ortega would do in custody — most notably, his apparent lack of any serious disciplinary infractions and progress in overcoming his history of substance abuse, a history that the Government concedes "played a role in his prior crimes." Gov't Opp'n 9.

---

district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release," without regard for Application Note 1(D) or "anything else in the now-outdated version of" Section 1B1.13. *Brooker*, 976 F.3d at 235-37. Where, as here, the proffered reasons meet the *more* stringent test in Section 1B1.13, a court plainly has discretion under *Brooker* to find that they qualify as "extraordinary and compelling" within the meaning of the statute.

In light of these considerations, the Court concludes that the length of time Ortega has already served is sufficient to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.  *See* 18 U.S.C. § 3553(a)(2)(A).  The need to provide medical care in the most effective manner also weighs heavily in favor of allowing Ortega to seek medical treatment outside the confines of the BOP.  *See id.* § 3553(a)(2)(D); *see also, e.g.*, *United States v. Gluzman*, No. 96-CR-323 (LJL), 2020 WL 4233049, at *18-19 (S.D.N.Y. July 23, 2020) (granting a motion for compassionate release in part based on the "need . . . to provide the defendant with needed . . . medical care . . . in the most effective manner").[3] Finally, it bears mentioning that the need for specific deterrence and the need to protect the public from further crimes of the defendant weighed much more heavily at the time of sentencing than they do today.  Put simply, given that Ortega's medical condition severely limits his ability to complete daily, mundane tasks such as brushing his teeth, Ortega's physical and mental capacity to reoffend is extremely limited; on top of that, he has taken steps to address the substance abuse disorder that played a role in his prior crimes.  *See e.g.*, *United States v. Asaro*, No. 17-CR-127, 2020 WL 1899221, at *1, *7 (E.D.N.Y. Apr. 17, 2020) (granting compassionate release to a previously violent defendant because his physical ailments, including expressive aphasia, made it unlikely that he remained capable of orchestrating complex criminal schemes). Notably, even the Government acknowledges that there is a "a now-lower likelihood that

---

[3] The Government's assertion that "there is no indication that the defendant will receive any better treatment for his medical conditions in the general community than he is receiving at the BOP" barely warrants a response.  Gov't Opp'n 8.  Notably, the Department of Justice's own Inspector General has acknowledged that "providing adequate healthcare for inmates remains a challenge for the BOP" and that "certain characteristics of the BOP's population heighten the challenge of providing proper care for inmates, including aging inmates, inmates with chronic illness, and inmates with mental health issues."  U.S. Dep't of Justice, Office of the Inspector General, Top Management and Performance Challenges Facing the Department of Justice — 2019, at 4 (2019), *available at* https://www.oversight.gov/sites/default/files/oig-reports/2019.pdf.

[Ortega] will engage in violent armed robberies" (although it goes on to speculate that Ortega may "find other methods of committing crimes in order to make money or to fuel . . . [his prior] substance abuse disorder"). Gov't Opp'n 9.

In sum, the Court GRANTS Ortega's motion for compassionate release and shortens his term of imprisonment to time served plus two weeks (to facilitate an orderly reentry, to permit the Government to seek a stay in the event that it intends to appeal, and to permit the Government to make any necessary or appropriate victim notifications). The other aspects of Ortega's sentence — including the length and conditions of supervised release — remain in effect.

One housekeeping matter remains. Ortega and the Government filed their submissions under seal and filed heavily redacted versions of them publicly.[4] Most, if not all, of the redacted or sealed information pertains to Ortega's medical conditions and history. It is true that such information is frequently redacted in court filings — on the theory that the interest in privacy outweighs the presumption in favor of public access to judicial documents. On that theory, the Court agrees that Ortega's actual medical records, submitted by both Ortega, *see* ECF Nos. 101-2, 101-3, and the Government, *see* ECF No. 105-1, can and should remain under seal in their entirety. But the Court is inclined to believe that the parties' motion papers themselves should be filed without redaction (or with significantly narrower redactions), as Ortega's medical conditions are the crux of his arguments for compassionate release; thus, making them public is critical to ensuring that "federal courts, although independent . . . have a measure of

---

[4]    They did so without seek leave from the Court (except as to some records submitted by Ortega in support of his motion) in accordance with the Court's Individual Rules and Practices — namely, by letter-motion filed on ECF seeking leave to file materials under seal or in redacted form. *See* ECF No. 101. Parties may not file submissions under seal except with leave of Court.

accountability" and to enabling "the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995). To the extent that either party disagrees, and believes that the parties' motion papers should remain under seal and/or redacted (either in their current form or with narrower redactions), the party shall show cause in writing by **April 14, 2023**, why that is consistent with the right of public access to judicial documents (and seek approval of any redactions in accordance with the procedures set forth in the Court's Individual Rules and Practices for Criminal Cases). Absent a submission by that date, the parties shall promptly refile their motion papers without redaction on ECF.

    The Clerk of Court is directed to terminate ECF No. 99.

    SO ORDERED.

Dated: March 31, 2023
       New York, New York

                                          JESSE M. FURMAN
                                          United States District Judge